[Civ. No. 16586. Second Dist., Div. One. Jan. 6, 1949.]

THE PEOPLE, Respondent, v. ONE 1937 BUICK COUPE, Defendant; SEABOARD FINANCE COMPANY (a Corporation) et al., Appellants.

Bromley, Ritter & Lindersmith, H. E. Lindersmith and K. E. Nungesser for Appellants.

Fred N. Howser, Attorney General, and Wm. E. James, Deputy Attorney General, for Respondent.

WHITE, J.—This is an appeal from a judgment entered in a proceeding by the People of the State of California to

forfeit the interest of the registered and legal owners of a 1937 Buick automobile upon the ground that the vehicle had been used to unlawfully transport marijuana. (Health & Saf. Code, §§ 11610 to 11629.) Both the registered owner and the legal owner have appealed from the judgment of forfeiture.

It is undisputed that on August 30, 1947, the vehicle was being operated by John Dominguez, brother of the registered owner, Louise Mouneu, and that at the time of the seizure and prior thereto and to the knowledge of John Dominguez, marijuana was in the possession of one Raymond Aragon, who was then and there an occupant of the vehicle. The sole question raised on this appeal is the sufficiency of the evidence to support the trial court's finding "that said vehicle was in the possession of said John Dominguez, with the knowledge, consent and permission of the registered owner, Louise Mouneu."

On behalf of the People, E. J. Mantler, a state narcotic inspector, testified that on September 12, 1947, he and Inspector Sanford had a conversation with Mrs. Mouneu at her home. "We asked Mrs. Mouneu whether or not she had lent the car to John Dominguez, and she stated that she had, that she had lent it to him and to another brother on previous occasions; the reason she had done so was that her husband had a car and that she did not need the car for her own use. . . . That is all that I can recall." On cross-examination the witness testified in part as follows:

"Q. At the time that you are testifying to now, was the conversation that she loaned the car to him on one occasion, or just previous occasions? A. She said previously, and she said, I think, two weeks ago—two weeks from the time that I spoke to her she had lent him the car. . . . Q. . . . did you ask her specifically whether she had loaned the car to her brother on August 30, 1947? A. I don't honestly recall if I asked that specific date. I think the question was so phrased as to whether she had loaned the car at that particular time—whether or not the car was still in the brother's possession following her loaning it to him."

On redirect examination the witness testified: "Q. . . . just for clarity, did you question her as to the last time she had seen the car? A. That is correct. Q. Whether she had turned it over to her brother? That is correct. She stated about two weeks prior to the time that we had called on her."

For the defense, Mrs. Mouneu testified that she was the registered owner of the vehicle; that John Dominguez was her brother; that she lived with her husband and children on East 76th Street and her brother lived with his wife and mother on East 102d Street; that she did not see her brother on August 30, 1947; that she had left her home at 7:45 in the morning to go to a wedding and then to a ranch, and did not return until around six in the evening; that she had not been in communication with her home at any time during that day. She testified that she left her home in her husband's car, a Chevrolet, leaving the Buick at home; that the ignition keys to the Buick were left at home; that her children were at home, including Mary Louise, aged 19; that she did not give Mary Louise or any of the children or anyone permission to loan the car to her brother on that date; that she had no conversation with her brother relative to his borrowing the car on August 30. She had in the past loaned the car to her brother, the last time being about a week before August 30, 1947. Whenever her brother borrowed the car he obtained permission from her personally, and only on the one occasion in question, to her knowledge, had he ever taken the car without first requesting permission. With reference to the conversation testified to by Inspector Mantler, Mrs. Mouneu testified that Inspector Mantler ''asked me if my brother ever did get my car with my permission, and I said yes, I have been lending it to him sometimes, he used my car.''

On cross-examination Mrs. Mouneu testified that her brother had borrowed the car a week before August 30 to take his pregnant wife to a clinic; that he borrowed the car ''a lot of times''; that she kept the keys in a cupboard; that her brother knew where she kept them. ''Q. And when conversing with Lieutenant Huber did you state that you had loaned this car to Dominguez, your brother, on the date of the arrest and that you had loaned it to him on numerous occasions previously? A. Yes, I told him that I had loaned him the car all the time before. Q. I am asking you, did you state that you had loaned the car to him on the day of his arrest? A. No, I did not. Q. Did you state at that time that you did not know that he was engaged in narcotics trafficking? A. That is right. Q. But that you did know that he had spent some time in a reformatory? A. Yes, that is right. . . . Q. Do you recall at that time telling him (a deputy attorney general) that you loaned the car to your brother, John Dominguez, on

the day in question? A. I told him that I used to loan him the car all the time before.''

Mary Louise, daughter of Mrs. Mouneu, testified that John Dominguez came to the house about 9 o'clock in the morning. ''. . . he wanted to borrow the car, and my mother wasn't home, *I knew she always loaned it to him*, so I just gave him the keys and kept on doing my housework.'' (Emphasis added.) She further testified that her mother was not at home all that day; that her mother did not give her permission to loan the car to anyone; that on previous occasions when John Dominguez borrowed the car her mother was at home.

It is urged that the trial court erred in finding, upon the evidence above set forth, that the vehicle was in the possession of Dominguez with the ''knowledge, consent and permission'' of the registered owner, his sister. Appellants point out that the testimony of Mrs. Mouneu was corroborated by her daughter to the effect that no permission was given on this particular occasion; that on each previous occasion of borrowing the brother had asked permission, indicating that he himself did not consider that he had a general permission. It is submitted by appellant that evidence of permission on previous specific occasions warrants no inference of a general permission nor of a specific permission on the particular occasion in question. It is also noted that Inspector Mantler would not testify that he had asked Mrs. Mouneu whether she had loaned the car on the specific date of August 30, 1947.

 Under the statute, the only grounds upon which the owner may defend against a proposed forfeiture are that the vehicle was not in fact used to transport narcotics or that narcotics were not unlawfully possessed by an occupant of the vehicle. (Health & Saf. Code, § 11619.) An additional defense, read into the statute by the courts to save its constitutionality under the due process clauses of the state and federal Constitutions, is that the owner did not consent to the taking of his vehicle. (*People* v. *One 1941 Ford 8 Stake Truck*, 26 Cal.2d 503 [159 P.2d 641]; *People* v. *One 1941 Chrysler Tudor*, 71 Cal.App.2d 312 [162 P.2d 653].) The question of lack of consent is a matter of defense which must be pleaded and proved, and in the absence of any evidence on the issue of consent the interest of the owner must be forfeited. (*People* v. *One 1939 La Salle 8 Sedan*, 45 Cal.App.2d 709, 713 [115 P.2d 39]; *People* v. *One 1937 Plymouth 6,*

37 Cal.App.2d 65 [98 P.2d 750].) Moreover, it is not enough to show that the consent or permission was limited or qualified and that the permittee exceeded the limitations of the permission. The owner parts with *possession* at his peril. (*People* v. *One 1941 Chrysler Tudor, supra,* p. 316; *People* v. *One 1941 Ford 8 Stake Truck, supra.*) Consent may be either express or implied. (*People* v. *One 1937 Plymouth 6, supra,* p. 72.

■ The record discloses evidence of sufficient substantiality, if believed by the trial court, to support the finding complained of, even though the evidence of the witnesses for the defense was not directly contradicted. It is for the trier of fact, and not this court, to determine the value and effect of evidence and the credibility of witnesses. ■ The trier of fact "is the exclusive judge of the credibility of the witnesses, and while a witness is presumed to speak the truth, this presumption may be repelled by the manner in which he testifies, by the character of his testimony, *or by his motives or obvious interest.* (Code Civ. Proc., § 1847; see cases collected 27 Cal.Jur. § 154, p. 179.) Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. . . ." (Emphasis added.) (*People* v. *One 1941 Chrysler Tudor, supra,* p. 315; quoted also in *People* v. *One 1940 Chrysler,* 77 Cal.App.2d 306, 314 [175 P.2d 585].)

In the present cause there was some testimony that Mrs. Mouneu had admitted "loaning" the vehicle either on the day in question or "about two weeks" prior to September 12, 1947. ■ Since the law makes the temporary use of an automobile, without the owner's consent, a misdemeanor (Pen. Code, § 499b), there arises the presumption that one operating the automobile of another has the necessary consent to make his act lawful (Code Civ. Proc., § 1963, subd. 33). ■ Of course this inference and presumption may be overcome and are overcome when there is sufficient evidence to the contrary. But a presumption or inference of fact is not overcome when in the exercise of its prerogative the trial court disbelieves and rejects such contrary evidence.

■ In evaluating the evidence, the court was entitled to consider the interest of a witness or witnesses seeking to avoid a forfeiture. Also, in arriving at its conclusion that the automobile was used with the consent of the owner, the court was entitled to give consideration to the relationship of the parties involved, the custom of leaving the keys where the brother

could obtain them, and the custom of loaning the vehicle to the brother, as testified to by the owner herself, "all the time before," or "a lot of times," and, according to her daughter, that "she always loaned it to him," from all of which the court could properly infer that the brother had implied permission to use the vehicle. (*Burford* v. *Huesby,* 35 Cal.App. 2d 643, 647 [96 P.2d 380].)

It is now established law in this state that the innocence of the owner is no defense to a forfeiture proceeding where the owner has consented to the use of his automobile by a person who, without the owner's knowledge, uses it for an unlawful purpose. (*People* v. *One 1937 Plymouth 6, supra,* pp. 68, 69.) In upholding the harsh provisions of the forfeiture law here in question, which the courts have interpreted to mean that an innocent owner of an automobile surrenders his control thereof at his peril, the Supreme Court, in *People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503, 507 [159 P.2d 641], said: "Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics, with its disastrous effect upon the unfortunate members of society, is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded."

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.