[L. A. 21289. In Bank. Mar. 17, 1950.]

JACK SCHEFF et al., Respondents, v. RAYMOND W. ROBERTS et al., Defendants; CHARLES L. FINK et al., Appellants.

Charles A. Thomasset for Appellants.

Borah & Borah and Julius Borah for Respondents.

SPENCE, J.—Defendants Charles L. Fink and Charles L. Fink doing business as Norge Refrigerator Repair Shop appeal from a judgment for plaintiffs in an action for damages sustained as the result of an automobile collision. The cause was tried by the court sitting without a jury, and the appeal is presented on a settled statement.

On January 23, 1947, a Studebaker pickup truck owned by defendant Charles L. Fink and operated by defendant Raymond W. Roberts collided with plaintiffs' automobile. It is undisputed that Roberts was negligent and that his negligence was the proximate cause of the accident. The court found that at the time of the accident California Refrigerator Repair Shop, a corporation, was the *alter ego* of Charles L. Fink; that Roberts was employed by said corporation and Charles L. Fink; that Roberts was operating the truck after his regular hours of employment and with the consent and permission of said Fink. Appellants challenge the sufficiency of the evidence to sustain the above findings as to these particulars: (1) the *alter ego* identification of Fink; (2) the employment relationship of Roberts with Fink; and (3) the operation of the truck with the "consent and permission" of Fink. It is stipulated in the record that the judgment against appellants was "predicated solely upon the findings that defendant Raymond W. Roberts was operating the Studebaker truck with the consent and permission of defendant Charles L. Fink and Charles L. Fink doing business as Norge Refrigerator Repair Shop."

Section 402(a) of the Vehicle Code imposes liability upon the "owner of a motor vehicle" when the driver, whose negligent operation caused the injury, operated such vehicle "with the permission, express or implied, of such owner." Under such statute, permission cannot be left to speculation or conjecture nor be assumed, but must be affirmatively proved (*Barcus* v. *Campbell*, 90 Cal.App.2d 768, 773 [204 P.2d 65]), and the fact of permission is just as important to sustain the imposition of liability as is the fact of ownership (*Krum* v. *Malloy*, 22 Cal.2d 132, 134 [137 P.2d 18]). However, the question of whether there was such permission is one to be

determined by the trial court upon the facts and circumstances in evidence and the inferences reasonably to be drawn therefrom (*Casey* v. *Fortune,* 78 Cal.App.2d 922, 923 [179 P.2d 99]), and its decision will not be disturbed upon appeal where the record furnishes substantial support therefor (*Harms* v. *Reed,* 73 Cal.App.2d 853, 860 [167 P.2d 747]). Such is the case here with respect to the trial court's findings on the issue of permissive operation of the truck, and it therefore becomes unnecessary to consider the sufficiency of the evidence to sustain other findings to which appellants object as above noted.

The pertinent facts appear as follows: Roberts was an employee of the California Refrigerator Repair Shop, a corporation, engaged in the business of repairing refrigerators and other appliances. Fink was its president and general manager; he owned about 90 per cent of the stock; and he was in control of and ran the business, drawing a salary therefor. Roberts testified that he was first "hired by" Fink "about three years before going into the service"; that after he "got out of the service," he was again "employed by" Fink and that he had been so working "about eight months" prior to the accident. He stated that in the course of his employment he drove a truck—"one of the regular trucks" belonging to the corporation and used to "pick up any machines that had to be fixed." In identification of the Norge Refrigerator Repair Shop, Fink testified that it was merely a name he adopted as a convenient telephone listing for advertising purposes; that calls from customers wanting such repair service were handled by the corporation, as "Norge" had no employees; that the equipment used in the work belonged either to the corporation or to himself personally; that the corporation did not pay him anything if his equipment was used and that he did not pay the corporation for the service of its employees; and that the money received for the repair services went to the corporation.

The truck involved in the accident was a Studebaker owned by Fink personally but registered under the name of "Norge." It had been used by the California Refrigerator Repair Shop prior to 1943. It was not being used in the business at the time of the accident, and in fact, had been "up for sale" for some months. Roberts testified that on the day of the accident he "quit work" about 6:30 p. m. and took the truck, which was parked "on [a] side street next to the shop," as it was late and he was anxious to get home to take his "wife

for treatments.'' Fink was at the shop at the time but he did not see Roberts leave. Roberts did not tell Fink that he was taking the truck. He did not ask Fink if he could use the truck and Fink did not know anything about his taking it. When he took the truck, it was not visible from the place where Fink was in the shop. Roberts obtained the key from a desk drawer in a room apart from where Fink was—''up front'' in the shop ''taking care of the customers.'' Roberts knew where the key was kept, and Fink did not see him take it. He testified that he did not ask Fink for the key because Fink ''was busy at the time''; that he ''just helped [himself]'' and intended to tell Fink ''the [next] morning.'' He further testified that a few times previously, with Fink's permission, he had taken ''other trucks'' home after working hours, ''regular trucks'' (belonging to the corporation); that Fink ''had rather [he] wouldn't take them, but under the circumstances''—''taking [his] wife for treatments''—had ''loaned them to [him]''; that a ''week'' or ''two weeks'' before the accident Fink had similarly permitted him to take the Studebaker truck and did not object ''under the circumstances.'' Fink testified that when Roberts had asked on other occasions for a truck ''to take his wife for treatments,'' he had let Roberts ''have a Dodge'' (belonging to the corporation) but ''never [the] Studebaker'' because it was the only one ''in the place'' that ''wasn't insured''; it was ''up for sale—not supposed to be used'' and he himself ''hardly'' ever drove it unless ''to show it to a prospective customer who wanted to buy a truck.'' Roberts was not discharged after the accident.

As thus reviewed, the record discloses evidence of sufficient substantiality to support the finding that Roberts was operating the Studebaker truck with the consent and permission of its owner, Fink. So significant are these factors: property of the corporation and property of Fink were used together generally as available in the shop; Roberts had been permitted to drive the corporation's trucks on several occasions and the Studebaker at least once, after working hours in ''certain circumstances''—for ''taking [his] wife for treatment,'' the same situation that prompted his taking the Studebaker on the day of the accident; the key to the Studebaker was left in an office desk where it was readily accessible; the several years' working association that existed between Fink and Roberts in the business, closely akin to an employer-employee relationship in view of Fink's ''hiring'' of Roberts for the corporation, wherein Fink held the bulk of the stock

and was in complete control; and Roberts was not discharged from his employment after having allegedly taken Fink's property for his own use but was retained as before. From these facts and the inferences reasonably deducible therefrom, the trial court was justified in its determination that Roberts had implied permission to use the truck at the time in question. (*Flemmer* v. *Monckton,* 73 Cal.App.2d 271, 274-276 [166 P.2d 380] ; *Brown* v. *Aldrich,* 77 Cal.App.2d 693, 694-696 [176 P.2d 89] ; *Casey* v. *Fortune, supra,* 78 Cal.App.2d 922, 925; *Reed* v. *Cortez,* 88 Cal.App.2d 416, 420-422 [198 P.2d 911].)

Appellants argue that because both Roberts and Fink testified that Roberts did not have express permission to use the Studebaker truck on the occasion of the accident, permission cannot be inferred. But such testimony may not influence the result on an appeal of this character where the conduct of the parties and the circumstances existing at the time sustain an inference of implied permission as the basis of the imposition of liability under the statute. (*Burford* v. *Huesby,* 35 Cal.App.2d 643, 647 [96 P.2d 380].) ▮ Moreover, in evaluating the testimony of Fink and Roberts, the trial court was entitled to consider their "interest in the result of the case"—Fink as owner of the truck liable for its permissive use and Roberts as an employee of the corporation controlled by Fink. (*Flemmer* v. *Monckton, supra,* 73 Cal. App.2d 271, 275; see Code Civ. Proc., § 1847; *People* v. *One 1937 Buick Coupe,* 89 Cal.App.2d 556, 561 [201 P.2d 402].)

▮ Nor does it avail appellants to argue that the record establishes that Fink had no knowledge of Roberts' intended use of the truck, and that in the absence of such factor, implied permission may not be found. (*Bradford* v. *Sargent,* 135 Cal.App. 324, 330 [27 P.2d 93] ; *Howland* v. *Doyle,* 6 Cal. App.2d 311, 315 [44 P.2d 453].) In *Burgess* v. *Cahill,* 26 Cal.2d 320 [158 P.2d 393, 159 A.L.R. 1304], this proposition was considered and it was held that prior knowledge is not a necessary element of implied permission. The language to the contrary in the cases cited by appellants was there disapproved, and it was recognized at page 324 that "knowledge or information of the intended use of [a] car had reference to the element of 'express' as opposed to 'implied' consent." (See *Burford* v. *Huesby, supra,* 35 Cal.App.2d 643, 644.)

▮ Appellants also cite Roberts' procurement of the key from the desk after he looked to see "where Mr. Fink was" and found that "he was busy and out of sight" as conduct

showing Roberts' purpose to avoid Fink at that time. While such action might suggest a plan of furtive movement and concealment on the part of Roberts, it likewise is consistent with the inference that Roberts looked for Fink in order to mention the fact that he was going to take the truck but upon seeing that Fink was ''busy,'' decided that it was not necessary in view of the same circumstances prevailing as had existed on previous occasions when Fink had loaned him other trucks as well as the Studebaker for ''taking [his] wife for treatments.'' The latter interpretation would indicate a course of open and unconcealed behavior on the part of Roberts coincident with his taking the truck ''without hesitation and without apparent consciousness of disobeying instructions, or violating the law'' (*Flemmer* v. *Monckton, supra,* 73 Cal.App.2d 271, 276) and in the honest belief that Fink had no objection to his using it. It is not open to appellants to complain that the trial court from the recited facts authorizing ''either one of two opposite inferences,'' adopted the one favorable to respondents and rejected the contrary—resulting in a ''decision . . . binding upon the appellate court.'' (*Boland* v. *Gosser,* 5 Cal.App.2d 700, 701 [43 P.2d 559]; see, also, *Harms* v. *Reed, supra,* 73 Cal.App.2d 853, 860.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.