[Civ. No. 23312.   Second Dist., Div. One.   May 2, 1960.]

THE PEOPLE, Respondent, v. ONE 1957 FORD 2-DOOR, LICENSE NO. MLS 842, Defendant; KING MOTOR COMPANY (a Partnership) et al., Appellants.

R. D. Sweeney and John R. Y. Lindley for Appellants.

Stanley Mosk, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment which forfeited the automobile in question to the State of California.

In this proceeding the People seek to forfeit the automobile, particularly described, because of the claim that it was used in violation of section 11610, Health and Safety Code. The notice of seizure and intended forfeiture proceedings was directed to Joseph Olguin Gonzales, the registered owner, and King Motor Company, the legal owner. Gonzales defaulted. King Motor Company filed an answer denying that the car was used in violation of the narcotic laws.

A résumé of the facts is as follows:

On July 2, 1958, Officers Hector Garcia and José Castellanos of the Los Angeles Police Department were "cruising and patrolling the area" in an unmarked police car at about 6 or 7 o'clock in the evening, and saw two known female narcotic users standing at the partially opened door of the men's restroom of a service station located on the corner of First and Soto Streets. The police saw one 1957 Ford 2-door automobile, License Number MLS 842 "in the gas station parked by the pumps." The police drove their car up the street, turned around and came back and drove into the gasoline station. Garcia heard one of the women who was then standing near the men's restroom door say "Watch it. Here is the narcos." "Narcos" is slang for narcotics officers. The officers got out of their car and identified themselves as policemen whereupon the door to the restroom was slammed shut. Officer Garcia had a master key and opened up the door to where Joseph Gonzales was standing. The officers heard Gonzales flush the toilet. They searched Gonzales and found 10 capsules of heroin on his person and placed him under arrest. The officers asked him where he had purchased the heroin and he said that he had bought it "on Temple Street about half an hour prior." The officer then asked Gonzales where his car was and he said "it was parked by the pumps, by the gasoline pumps." The question was then put to Gonzales, "How did

you get from Temple Street over here?'' and Gonzales answered, "In my automobile."

Gonzales appeared to be under the influence of narcotics at the time of the arrest; there were fresh puncture marks on his arm and he was known to the police department as a user of narcotics. After the arrest Gonzales told the police in effect that he blamed them for picking him up and that he had "turned himself in once before for care voluntarily and he was glad it was over."

The heroin capsules were marked by the police and placed in envelopes for safekeeping. At the time of trial Officer Garcia at first stated that there were nine capsules of heroin found on the person of Gonzales and then corrected his statement to say that there were 10 such capsules. The report of the police chemist showed that there were 10 capsules delivered to him and the chemist testified that he analyzed the powder contained in such capules and found it to be heroin. There was testimony that the capsules in evidence were the capsules taken from the possession of Gonzales. The capsules were marked by various identification marks by the various officers. A stipulation was entered into between counsel to the effect that the capsules might be returned to the police laboratory.

The investigation made by the legal owner of the car at the time of the purchase of the same by Gonzales was meager. At the trial the office manager of the appellant testified that she checked a customer's credit statement with reference to the purchase of the automobile. She further stated that she called and verified the employment of Gonzales but that she did not ask how long Gonzales had been employed. It was stated that the employer of Gonzales had stated that Gonzales was new with them and that they knew of nothing derogatory about Gonzales. The credit statement of Gonzales set forth that he had been with his last employer for six months which was untrue.

By stipulation the People introduced two statements of employers of Gonzales into evidence: the first statement had to do with Gonzales' employment for Nason Manufacturing Company from March 29, 1956, to August 10, 1956, and the second statement had to do with his employment which started on December 13, 1956. The car was purchased on December 26, 1956.

The value of the car on the date of the seizure was $3,566.50

which amount was less than the unpaid balance. Gonzales was delinquent in his payments on the car at the time of the seizure and the appellants were preparing to repossess the same. No check was made by the appellants with any of the persons listed by Gonzales as personal references and the first company named which had employed Gonzales was not even contacted by the appellants. The credit statements of Gonzales reflected that he made many other payments on contracts with other concerns in considerable amounts when the amount of his salary was considered. In other words, the appellant did not inquire about how long Gonzales had worked at his most recent employment, and they did not even consult with the named former employer. The judge stated that ''there was not an investigation nor compliance with the statute.'' (Health & Saf. Code, § 11620.)

The appellants in their brief make no point of the judge's ruling in this respect except to mention it in their contentions. No authority is cited to support a view to the effect that the appellants did make a ''reasonable investigation of the moral responsibility, character and reputation'' of Gonzales at the time of the purchase of the automobile.

We have, therefore, assumed that this phase of the case has been abandoned by appellants.

Appellants assert that it was error for the trial court:

(1) to find that the car sued upon was the property of Gonzales and that it was error to admit the statements of Gonzales as they were hearsay as to appellants;

(2) to find that the person arrested was Joseph Olguin Gonzales described in the pleadings;

(3) to find the following, because of insufficiency of the evidence: (a) that the car described in the pleadings was seized by the police officers on July 2, pending the outcome of the proceeding; (b) that on the issue of unlawful use, the car was used on July 2, 1957, to transport and convey heroin; (c) that the legal owner of the car failed to establish that a reasonable investigation as to the moral responsibility, character and reputation of the purchaser was made prior to the creation of the interest therein and without any knowledge that the car was being or was to be used for the purpose charged; (d) that on July 2, 1957, the car was being used by Joseph Olguin Gonzales, registered owner, to unlawfully conceal, convey, carry and transport heroin with full knowledge thereof;

(4) to admit into evidence the capsules containing heroin because there was no proper foundation therefor;

(5) to find that the car sued upon was used in violation of the law;

(6) to deprive the appellant of due process because of the supposed destruction by the police or others of the capsules after the trial and that appellants were not confronted with admissible physical evidence against their interest in the car.

We find no merit to any of the appellant's contentions.

Appellant argues that the evidence shows that the registered owner of the car sued upon was Joseph Olguin Gonzales and that Joseph Gonzales, the person arrested, may not have been the same person. The officers saw Joseph Gonzales at the gasoline station on the corner of Soto and First Streets, they saw also the automobile in question parked at the gasoline pumps of the station where Joseph Gonzales was arrested. He said that his car was "by the gasoline pumps" and that he had come from Temple Street to that location "in my automobile."

The officers impounded the car which Gonzales stated was his, and the car which was impounded was registered to Joseph Gonzales. No one appeared at the trial to claim that the Joseph Gonzales who owned the automobile was not in fact the Joseph Gonzales who was arrested. If there had been a Joseph Gonzales other than the Joseph Gonzales who was arrested the first named person would have had to prove that the arrestee took his car without his consent. ▆▆▆ Lack of consent to use a car is an affirmative defense. No such lack of consent was pleaded or proved. In fact it was not even intimated at the trial that such a defense existed. (*People v. One 1939 LaSalle,* 45 Cal.App.2d 709 [115 P.2d 39] ; *People v. One 1937 Buick Coupe,* 89 Cal.App.2d 556, 560 [201 P.2d 402] ; *People* v. *One 1947 Oldsmobile,* 90 Cal.App.2d 848 [204 P.2d 104].)

▆▆▆ Appellant insists that Gonzales made no statement to the effect that the car in question belonged to him. We think there was ample evidence in the record to indicate that the car at the pumps (namely, the 1957 2-Door Ford, License Number MLS 842) was the car of Gonzales and that he, Gonzales, claimed it as "my automobile."

▆▆▆ When Officer Garcia was testifying about what Gonzales had said to him there was no objection by appellant to any of the questions. After the evidence was in, appellant moved to strike the testimony which pertained to where Gon-

zales' automobile was and how he got to the service station as being hearsay as to appellant. The motion was denied and we think properly so under the circumstances.

■ Appellant further argues that the capsules produced at the trial were not the same capsules allegedly found at the time of the arrest and that destruction of the capsules by the authorities after the time for a motion for a new trial had expired deprives it of the right to have this court consider the whole record on appeal. Contrary to appellant's statement in the brief, Officer Castellanos did testify that each of the capsules was marked and that the capsules so marked and introduced into evidence were the capsules which were taken from the possession of Gonzales. The credibility of Officer Castellanos was a matter for the trial court. (*People* v. *Ambrose,* 155 Cal.App.2d 513, 520 [318 P.2d 181] ; *Lipton* v. *Johansen,* 105 Cal.App.2d 363 [233 P.2d 648].) There is nothing in the record before us to the effect that the capsules were destroyed. It is true that each of the briefs contains such a statement, there is nothing which we can find in the record to support such a statement. Even if the capsules were later destroyed, the trial court made its findings with reference thereto at the time of trial, and there being substantial evidence to sustain the finding, we see no reason that this court should require the capsules at this time.

Appellant claims the lack of due process of law. We have heretofore set forth the facts and related what was done. ■ It is true that the forfeiture provisions of the law are severe yet they are civil in character. (*People* v. *One 1952 Chevrolet,* 128 Cal.App.2d 414, 419 [275 P.2d 509] : ''The purpose of the statutes is to curb the narcotic traffic.''

■ In *People* v. *One 1948 Chevrolet Convertible Coupe,* 45 Cal.2d 613, 619 [290 P.2d 538, 55 A.L.R.2d 1272] it is set forth that:

''The proceeding under section 11610 is *in rem* (citations), even though it is a kind of *in rem* proceeding in which the claimants to the property are entitled to a jury trial (citations), and the declarations as well as the acts of the person in control of the vehicle bind the vehicle and thereby bind all claimants thereto.'' ■ And, as stated in *People* v. *One 1937 Buick Coupe,* 89 Cal.App.2d 556, 560 [201 P.2d 402] :

''Under the statute, the only grounds upon which the owner may defend against a proposed forfeiture are that the vehicle was not in fact used to transport narcotics or that narcotics

were not unlawfully possessed by an occupant of the vehicle. (Health & Saf. Code, § 11619.) An additional defense, read into the statute by the courts to save its constitutionality under the due process clauses of the state and federal Constitutions, is that the owner did not consent to the taking of his vehicle. (*People* v. *One 1941 Ford 8 Stake Truck*, 26 Cal.2d 503 [159 P.2d 641]; *People* v. *One 1941 Chrysler Tudor*, 71 Cal.App.2d 312 [162 P.2d 653].)''

In *People* v. *One 1941 Ford 8 Stake Truck*, 26 Cal.2d 503, 507 [159 P.2d 641] it is said:

''. . . Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics, with its disastrous effect upon the unfortunate members of society, is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded.''

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.