[Civ. No. 26607.   Second Dist., Div. Four.   Apr. 16, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ONE 1961 FORD FALCON, LICENSE NO. VJD 265, Defendant; VICTOR SABINO et al., Defendants and Appellants.

Burton Marks for Defendants and Appellants.

Stanley Mosk, Attorney General, William James, Assistant Attorney General, and Mario Roberti, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—This is an appeal from a judgment which forfeited an automobile to the State of California as to its registered coowners, Victor and Mary Sabino, subject to a lien in favor of the legal owner, Automobile Club of Southern California.

Trial was by the court. The registered coowners appeal. The facts are as follows:

During the early morning hours of September 18, 1961, Officers Edward Brantley and Theodore Maurer of the Sheriff's Office of Los Angeles County were patrolling the Altadena area of Los Angeles County on a road called Chaney Trail. They observed an automobile parked with its lights off. They also observed a glow emanating from within the car which resembled that of a lighted cigarette. Because this was a fire area closed to smoking they stopped to investigate. Officer Brantley approached the vehicle on the driver's side and the driver Joanne Sabino, rolled down her window. The officer testified he smelled an odor which resembled that of marijuana. He walked around to the other side of the car and asked the passenger, Connie Neumann, to step out of the car and made inquiry of her regarding her smoking and also the contents of a package of cigarettes she had in her hand. As he had approached the parked car he had noticed that Connie was leaning forward in the seat doing something with her hands. After repeated requests, she showed him the package. He discovered what appeared to be a marijuana cigarette in the package and placed her under arrest.

Joanne Sabino was then questioned and the contents of her purse were searched. The officer found a brown paper bag in her purse which contained a substance resembling marijuana. She was then also placed under arrest.

All parties stipulated that the items mentioned were taken from the car; that they contained marijuana; that if a chemist were called he would so testify, and that there was a "proper chain of evidence."

Officer Brantley testified he had a conversation with Joanne after her arrest in which she stated she and Connie drove to downtown Los Angeles in the area of Seventh and Main Streets. There Connie left the car and purchased the marijuana from a person unknown to her. They then drove into the foothill area of Altadena and parked on Chaney Trail.

Officer Kipley testified he talked with Joanne in the county jail. She told him that at approximately 9 p.m. on September 17, 1961, she and Connie had driven to Los Angeles to go to a movie. As they were proceeding down the street they were approached by an unknown man who told them he had something to get rid of. He said, "It is marijuana. Would you like to buy some?" They each contributed $5.00 to purchase the contents of a brown paper bag. They went back to the automobile and drove to Altadena. Joanne stated she had never smoked marijuana prior to this occasion, and was curious as to the effect it would have on her. She admitted she saw the radio car, became frightened and put the brown paper bag in her purse. She further related the car belonged to her father but that she had permission to use it any time she wanted.

Officer Kipley testified he also had a conversation with Connie. Her statements were substantially the same as the statements made to him by Joanne. Connie related that she was examining the marijuana cigarette at the time the radio car approached and that she put it in the package of Parliament cigarettes.

At the trial Joanne testified she had never seen or smoked marijuana prior to her arrest; that a man just wanted to get rid of something and asked if she wanted to buy it. The man did not advise her she was purchasing marijuana but that she and Connie suspected it might be marijuana. Joanne also testified she had never smoked marijuana prior to the time they were arrested; that they had gone to the foothills with the intention to look at the substance in the bag; that Joanne's

father did not give her permission to take the automobile for the purpose of transporting marijuana.

An objection was made by the defense to the introduction of the marijuana into evidence on the ground that it was acquired as the result of an unlawful search and seizure. The objection was overruled. A later motion to quash the evidence was also overruled.

It was stipulated at the trial that the automobile in question belonged to Victor and Mary Sabino, the parents of Joanne Sabino; also, that Joanne could use the car with their permission whenever she wanted. Appellants made an attempt to introduce evidence that Joanne's parents had no knowledge their automobile would be used for an unlawful purpose. An objection by the People was sustained on the ground the evidence was irrelevant. After subsequent attempts by appellants to put on evidence showing lack of knowledge, it was stipulated that Joanne's parents had no knowledge the automobile would be used to carry narcotics. It was further stipulated the People objected to introduction of this evidence and that the objection was sustained by the court on the grounds of irrelevancy.

Appellants contend the search, the seizure of evidence, and the subsequent arrest of Connie and Joanne were unlawful because reasonable cause for search or arrest was lacking and therefore the evidence secured thereby was inadmissible. This contention is without merit.

Reasonable cause is generally defined as a state of facts that would lead a man of ordinary care and prudence to believe and entertain an honest suspicion that a person is guilty of a crime. (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

The question of whether an officer may stop to interrogate the occupants of a vehicle is a separate issue from whether there is a right to search and arrest the occupants. (*People* v. *King,* 175 Cal.App.2d 386, 390 [346 P.2d 235].)

As stated in *People* v. *Ellsworth,* 190 Cal.App.2d 844, 846-847 [12 Cal.Rptr. 433], "The courts of this state consistently have adhered to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the discharge of his duties [citations], particularly when the person to be interrogated is parked in an automobile on a secluded highway.... [Citation.]"

█ The reasons required to permit questioning are necessarily much less than would be required to permit arrest and search. (*People* v. *Davis*, 188 Cal.App.2d 718, 722 [10 Cal.Rptr. 610].)

█ In the case at bench the officers were clearly justified, and in fact a proper discharge of their duty necessitated that they stop to investigate a possible violation of the fire protection laws. Thereafter, the officer's noting the odor of marijuana, coupled with the furtive movement of Connie, was sufficient to arouse his suspicion and to justify the subsequent search.

█ The appellants further contend the trial court erred in sustaining the objection of the People that the evidence presented by appellants concerning the fact they were not aware the car would be used for an unlawful purpose was irrelevant. Appellants contend sections 11614 and 11619 of the Health and Safety Code are unconstitutional in that they deny equal protection of the law to registered owners of automobiles and confer special privileges and immunities on legal owners. These sections of the code provide that a legal owner's interest may be forfeited only if he has actual knowledge at the time his interest was acquired that the vehicle would be used to transport narcotics. Because no such defense is afforded registered owners appellants contend the code sections are unconstitutional. With this we disagree. █ As stated in *People* v. *One 1940 Ford V-8 Coupe*, 36 Cal.2d 471, 476 [224 P.2d 677], ''There are no constitutional obstacles to the application of a provision for forfeiture of all the rights of an owner who has consented to the use of his automobile even though he had no knowledge of the unlawful use. [Citations.]''

''Under the statute, the only grounds upon which the owner may defend against a proposed forfeiture are that the vehicle was not in fact used to transport narcotics or that narcotics were not unlawfully possessed by an occupant of the vehicle. (Health & Saf. Code, § 11619.) █ An additional defense, read into the statute by the courts to save its constitutionality under the due process clauses of the state and federal Constitutions, is that the owner did not consent to the taking of his vehicle. [Citations.]'' (*People* v. *One 1957 Ford 2 Door*, 180 Cal.App.2d 545, 551-552 [4 Cal.Rptr. 793].)

█ ''Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics, with its disastrous effect upon the unfortunate members of society,

is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded." (*People* v. *One 1941 Ford 8 Stake Truck*, 26 Cal.2d 503, 507-508 [159 P.2d 641].)

The court in *People* v. *One 1960 Mercedes Benz Roadster*, 211 Cal.App.2d 842, 844 [27 Cal.Rptr. 617], stated that "The Legislature intended to impede narcotics traffic by penalizing those persons who have control over a vehicle rather than those who may have a security interest in the vehicle but nevertheless in actuality have no physical control or possession over same from the moment the security transaction is entered into. For this reason we are persuaded by respondent's argument: 'The basic reason for the difference in classification between registered owners and sellers of automobiles is obviously the difference in the degree of control which each can exert over the use of the vehicle. Once the seller or lienholder has passed over to the purchaser control of a vehicle, he has lost effective control over the operation of that vehicle for months or even years. In the normal course of events, once the vehicle has been sold, the holder of any security interest in it will never even see the vehicle again, and the registered owner has the duty of maintaining the vehicle and the privilege of its everyday use. For all practical purposes, the registered owner is the *real* owner of the vehicle.

" 'On the other hand, when the registered owner of a vehicle relinquishes control of that vehicle, it is almost always to someone known to him—and generally quite well known to him. The loss of immediate control is generally for a relatively short period of time and to a restricted area. And, most important, the choice is completely his as to whether or not he will lend his car.' "

The evidence before us is undisputed that the registered co-owners gave permission to their daughter Joanne Sabino to use the automobile. Whether or not they knew the unlawful purpose for which she was using it is of no legal significance to the inquiry here. The trial court properly ruled on the objections raised.

Judgment is affirmed.

Burke, P. J., and Kinglsey, J., concurred.