[Civ. No. 33435. Second Dist., Div. One. July 10, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ONE 1964 CHEVROLET CORVETTE CONVERTIBLE, NEW YORK LICENSE NO. 3C1483, SERIAL NO. 408675 114966, Defendant; IRVING BUSCH, Defendant and Appellant.

Cantillon & Cantillon and James P. Cantillon for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne E. Graber, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—The within forfeiture proceeding had its genesis in the arrest of Frederick Benton Busch. Charged with unlawful possession of a billy club, possession of marijuana for sale and possession of marijuana (§ 11530, Health & Saf. Code) on October 13, 1964, he was acquitted by a jury on the first two counts but found "guilty of a violation of section 11530 of the Health and Safety Code, possession of a narcotic, to wit, marijuana, a felony, as charged in Count III of the information." (People v. Frederick Benton Busch, No. 295692.)[1] No appeal was taken from the judgment and the same became final.

On October 19, 1964, these proceedings were brought against the 1964 Chevrolet Corvette Convertible in the possession of Frederick on October 13, 1964, alleging that the vehicle was unlawfully used for possession of marijuana, in violation of section 11610, Health and Safety Code.[2] Irving

[1] An Agreed Statement on Appeal filed in lieu of a reporter's transcript in the first appeal (People v. One 1964 Chevrolet Corvette Convertible, 251 Cal.App.2d 424 [59 Cal.Rptr. 594]) and made a part of the record before us reveals the following facts upon which Frederick's criminal conviction was based. In the evening of October 12, 1964, Frederick, driving the Corvette, ran out of gas on Sunset Boulevard; two officers pushed the vehicle to the curb near an intersection but into a red zone, then drove Frederick to a telephone; Frederick obtained a ride to his place of employment. Around 1:30 a.m. on October 13, two other officers came upon the illegally parked Corvette, stopped, looked in and saw a "billy club" protruding between the bucket seats. They observed no registration displayed but noted that the vehicle bore New York license plates. Thereupon they opened the unlocked door and searched the Corvette; clearly visible from outside the vehicle was a paper bag on the deck to the rear of the seats; the bag contained 15 measured "half cans" of marijuana wrapped in wax paper; in an unlocked tool kit between the seats they found another bag containing 20 odd unused marijuana cigarettes. Around 2:15 a.m. while the officers were preparing impound forms, a Volkswagen bus drove up and Frederick alighted therefrom carrying a can of gasoline. The officers showed him the "billy club" and asked him if it was his; he replied that it was. When shown the two bags and the marijuana Frederick denied they were his; he denied any knowledge of the bags and denied that he was aware that they were in the Corvette. Frederick testified in the criminal trial that he did not have any knowledge of the presence of marijuana in the Corvette.

[2] Section 11610, Health and Safety Code, provides in pertinent part that "The interest of any registered owner of a vehicle used to unlawfully

Busch, Frederick's father and the registered owner, was served with Notice of Seizure and Intended Forfeiture (§§ 11612 et seq., Health & Saf. Code) and filed an answer admitting ownership of the vehicle but denying that either he or Frederick had knowledge that the same was used for an unlawful purpose. The People's motion for summary judgment was denied. In August 1965 a jury returned a verdict in favor of the owner denying forfeiture, but a new trial was ordered "on the ground of insufficiency of the evidence." The order was affirmed by this court (*People* v. *One 1964 Chevrolet Corvette Convertible*, 251 Cal.App.2d 424, 430 [59 Cal.Rptr. 594]); petitions for rehearing and for hearing by the Supreme Court were denied and remittitur issued. Thereafter the People filed notice of motion for summary judgment and in support thereof declaration of Officer Higgins and judgment roll in *People* v. *Busch*, No. 295692. The motion was granted; the owner appeals from judgment in favor of the People entered under section 437c, Code of Civil Procedure.

The sole question is whether in the forfeiture proceedings Frederick's judgment of conviction of possession of marijuana conclusively determines the issue of whether he had knowledge of the presence and narcotic nature of the marijuana found in the vehicle.

Section 11610, Health and Safety Code, requires the forfeiture of the interest of any registered owner of a vehicle unlawfully used for the possession of narcotics. The People have the burden of showing that the vehicle was in fact unlawfully used and the registered owner had knowledge thereof. On the motion for summary judgment it was conceded that (1) Irving Busch, Frederick's father, is the registered owner of the 1964 Chevrolet Corvette Convertible (Answer to Notice of Seizure and Intended Forfeiture Proceedings); and (2) on October 13, 1964, Frederick had the vehicle in his possession and drove the same with the owner's consent. While it is a defense that the owner did not consent to the use or taking of the vehicle (*People* v. *One 1941 Ford 8 Stake Truck*, 26 Cal.2d 503, 507 [159 P.2d 641]; *People* v. *One 1961 Ford Falcon*, 215 Cal.App.2d 149, 153 [30

transport . . . any narcotic, or in which any narcotic is unlawfully kept, . . . shall be forfeited to the State." This statute was repealed June 7, 1967; however, a saving clause was added which provides that the provisions of the statute continue to apply to those vehicles unlawfully used prior to the effective date of the repeal "until such vehicle is forfeited to the state, released to the person entitled thereto, purchased, sold, or otherwise disposed of pursuant to such provisions."

Cal.Rptr. 110] ; *People* v. *One 1957 Ford 2-Door,* 180 Cal.App. 2d 545, 551-552 [4 Cal.Rptr. 793]), it is an affirmative one which must be pleaded and proved. (*People* v. *One 1957 Ford 2-door,* 180 Cal.App.2d 545, 550 [4 Cal.Rptr. 793].) ▉ The owner's answer failed to set up such defense, thus consent was not a triable issue; moreover, he concedes in his opening brief that he "filed an answer in which he admitted . . . that at the time of the events in question his son, Frederick Benton. Busch, was in possession of said automobile with [his] consent."

Additionally, the People established on the motion that (1) on October 13, 1964, the 1964 Corvette was unlawfully used in that it contained substantial amounts of marijuana—the only marijuana received in evidence and used to convict Frederick in the criminal case; on October 13 Officers McGuire and Higgins searched the vehicle, found therein packages containing marijuana and numerous marijuana cigarettes and seized the vehicle for forfeiture proceedings (Declaration of James H. Higgins) ; and (2) Frederick, who had been driving the vehicle on October 13, 1964, with the owner's consent, knew of the presence of the marijuana therein and its narcotic nature—a jury returned a verdict of guilty of possession of marijuana in violation of section 11530, Health and Safety Code on October 13, 1964 (Minutes, January 8; 1965) and thereby impliedly found that the marijuana belonged to Frederick, he knew it was in the Corvette and knew of its narcotic nature (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359]), on January 20, 1965, criminal proceedings were suspended and he was granted probation for three years (Minutes, January 29, 1965), and no appeal was taken and the judgment of conviction became a final judgment on the merits (§ 1237, Pen. Code) prior to the commencement of the forfeiture proceedings herein. (*People* v. *One 1964 Chevrolet Corvette Convertible,* 251 Cal.App.2d 424, 426 [59 Cal.Rptr. 594].)

Since the People on the motion for summary judgment relied upon the effect of Frederick's criminal conviction which is asserted on grounds of collateral estoppel, we first turn to a consideration of the consequences of that judgment. ▉ The remedy of summary judgment is appropriate when the doctrine of res judicata in its subsidiary form of collateral estoppel can be used to refute all triable issues of fact suggested by the pleadings. (*Swaffield* v. *Universal Ecsco Corp.,*

271 Cal.App.2d 147, 158 [76 Cal.Rptr. 680]; *Wells Fargo Bank* v. *Kincaid,* 260 Cal.App.2d 120, 123 [66 Cal.Rptr. 832]; *Dryer* v. *Dryer,* 231 Cal.App.2d 441, 446 [41 Cal.Rptr. 839]; *Saunders* v. *New Capital for Small Businesses, Inc.,* 231 Cal. App.2d 324, 331 [41 Cal.Rptr. 703]; *Smith* v. *City of Los Angeles,* 190 Cal.App.2d 112, 128 [11 Cal.Rptr. 898]; *Olmstead* v. *Riley,* 135 Cal.App.2d 117, 121-122 [286 P.2d 579].)

Collateral estoppel may be invoked to conclusively resolve any issue necessarily determined in previous litigation between the same parties or their privies. There are three requirements for its application: (1) The issue decided in a prior adjudication must be identical to the issue presented in the action presently being litigated; (2) there must have been a final judgment on the merits in the previous action; and (3) the party against whom the plea is asserted must have been a party or in privity with a party to the prior adjudication. (*Bernhard* v. *Bank of America,* 19 Cal.2d 807, 813 [122 P.2d 892]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.,* 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Frazier* v. *Wasserman,* 263 Cal.App.2d 120, 125 [69 Cal.Rptr. 510].) Despite the fact that from a practical viewpoint criminal and civil actions cannot be identical as to the charge or as to the parties, the California Supreme Court has held that "[A]ny issue necessarily decided in a prior criminal proceeding is conclusively determined as to the parties if it is involved in a subsequent civil action" (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.,* 58 Cal.2d 601, 607 [25 Cal.Rptr. 559, 375 P.2d 439]) with certain specified exceptions not applicable here. "To preclude a civil litigant from relitigating an issue previously found against him in a criminal prosecution is less severe than to preclude him from relitigating such an issue in successive civil trials, for there are rigorous safeguards against unjust conviction, including the requirements of proof beyond a reasonable doubt [citation] and of a unanimous verdict [citation], the right to counsel [citation], and a record paid for by the state on appeal [citation.] Stability of judgments and expeditious trials are served and no injustice done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards." (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., supra,* at p. 606.)

The issue adjudicated adversely to Frederick in the criminal action is identical with the issue in the forfeiture

proceedings. When the jury found him guilty of possession of marijuana on October 13, 1964, it must have "necessarily decided" the issue involved herein—whether he had knowledge of the presence of the marijuana in the 1964 Chevrolet Corvette on October 13, 1964,—for in its verdict is the jury's implied finding "(1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic. (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].)" (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359].) Thus, Frederick's criminal conviction necessarily established that he knowingly possessed the marijuana and, since the sole basis for his conviction was the marijuana found in the Corvette, the conviction necessarily established that Frederick knowingly possessed the narcotic in the vehicle. Inasmuch as the conviction has become a final judgment for this purpose, the doctrine of collateral estoppel precludes the relitigation of the issue of Frederick's knowing possession of the marijuana in the Corvette which is conclusively determined as to him. (*People* v. *One 1948 Chevrolet Convertible Coupe,* 45 Cal.2d 613, 619 [290 P.2d 538, 55 A.L.R.2d 1272].)

Nothing in the record shows that the owner was present at the time of the events involving Frederick and the Corvette and either personally knew of or acquiesced in the unlawful use of the vehicle. However, for the purpose of forfeiture his knowledge of the unlawful use of the vehicle flows from Frederick's knowing possession of the narcotic in the Corvette conclusively established by his criminal conviction. It is uncontroverted that the vehicle was illegally used, and conceded that Irving Busch consented to the use of the vehicle by his son at the time the illegal use occurred. As said in *People* v. *One 1960 Ford,* 228 Cal.App.2d 571, 576 [39 Cal. Rptr. 636] : "Appellant was then in the position of an owner entrusting [his] vehicle to another who uses it illegally. Although [he] did not know that the car was to be so used nor did [he] acquiesce in such use, appellant's right, title and interest in the car was lawfully subject to forfeiture. (*People* v. *One 1941 Ford 8 Stake Truck* (1945) 26 Cal.2d 503, 507 [159 P.2d 641] ; *People* v. *One 1941 Chrysler Tudor* (1945) 72 Cal.App.2d 312, 316 [162 P.2d 653] ; *People* v. *One 1937 Buick Coupe, supra,* 89 Cal.App.2d 556, 560 [201 P.2d 402] ; *People* v. *One 1951 Ford Sedan, supra,* 122 Cal.App.2d 680,

685 [265 P.2d 176].)'' ██ It is well settled that if a registered owner entrusts his vehicle to another and that person knowingly possesses a narcotic in the vehicle, the trial court may infer knowledge on the part of the consenting owner. (*People* v. *One 1948 Chevrolet Convertible Coupe,* 45 Cal.2d 613, 618 [290 P.2d 538. 55 A.L.R.2d 1272]; *People* v. *One 1960 Ford,* 228 Cal.App.2d 571, 576 [39 Cal.Rptr. 636]; *People* v. *One 1952 Chevrolet,* 128 Cal.App.2d 414, 417 [275 P.2d 509]; *People* v. *One 1951 Mercury 2-Door Sedan,* 116 Cal.App.2d 692, 693 [275 P.2d 509]; *People* v. *One 1940 Chrysler,* 77 Cal.App.2d 306, 314 [175 P.2d 585].) ██ There are no constitutional impediments to a forfeiture when the owner entrusts his vehicle to another who uses it illegally, even though the owner does not know of or acquiesce in such use. An owner who entrusts the possession of his vehicle to another thereby ''accepts the risk that it will be used contrary to law . . . Clearly shown by the terms of section 11610 et seq. is a legislative policy that the vicious traffic in narcotics, with its disastrous effect upon the unfortunate members of society, is so great an evil as to justify the drastic penalty of confiscation of vehicles used to transport the contraband. The public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced, and although, in some cases, hardship may result from the enforcement of the statute, no constitutional guarantees are invaded.'' (*People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503, 507-508 [159 P.2d 641]; *People* v. *One 1948 Chevrolet Convertible Coupe,* 45 Cal.2d 613, 618 [290 P.2d 538, 55 A.L.R.2d 1272]; *People* v. *One 1964 Chevrolet Corvette Convertible,* 251 Cal.App.2d 424, 429 [59 Cal.Rptr. 594]; *People* v. *One 1960 Ford,* 228 Cal.App.2d 571, 576 [39 Cal.Rptr. 636].) As stated in *People* v. *One 1948 Chevrolet Convertible Coupe,* 45 Cal.2d 613, 618 [290 P.2d 538, 55 A.L.R.2d 1272], ''It was not necessary that Mrs. Phillips [owner] know of the illegal use. '. . . certain uses of property may be regarded as so undesirable that the owner surrenders his control at his peril. . . .' [Citation.] The purpose of the statutes is to curb the narcotic traffic, and 'the public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in other proves to be misplaced.' (*People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503, 508 [159 P.2d 641].) By entrusting the vehicle to her son, Mrs. Phillips accepted the risk that it would be used contrary to law. (*People* v. *One 1940 Ford V-*

*8 Coupe,* 36 Cal.2d 471, 476 [224 P.2d 677]; *People* v. *One 1933 Plymouth Sedan De Luxe Auto.,* 13 Cal.2d 565, 568 [90 P.2d 799]; *People* v. *One 1951 Ford Sedan,* 122 Cal.App.2d 680, 687 [265 P.2d 176]; *Dobbins' Distillery* v. *United States,* 96 U.S. 395, 398, 402 [24 L.Ed. 637]; *Van Oster* v. *Kansas, supra,* 272 U.S. 465, 467 [71 L.Ed. 354, 47 S.Ct. 133, 47 A.L.R. 1044]; *J. W. Goldsmith, Jr.-Grant Co.* v. *United States,* 254 U.S. 505, 512-513 [65 L.Ed. 376, 41 S.Ct. 189].)''

 Frederick's criminal conviction necessarily established that he knowingly possessed the marijuana found in the Corvette and estops him and the owner from relitigating the issue of knowledge.[3] Thus, on the evidence presented on the motion there remained no defense and no triable issue, and summary judgment for the People was proper. Judgment may be entered in the discretion of the court if the affidavits of the party moving for summary judgment are sufficient to sustain a judgment in his favor and the opposing party does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. (*Joslin* v. *Marin Municipal Water Dist.,* 67 Cal.2d 132, 147 [60 Cal.Rptr. 377, 429 P.2d 889]; *R. D. Reeder Lathing Co.* v. *Allen,* 66 Cal.2d 373, 376-377 [57 Cal.Rptr. 841, 425 P.2d 785]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Thornton* v. *Victor Meat Co.,* 260 Cal.App.2d 452, 458 [67 Cal.Rptr. 887].)

The owner argues that the doctrine of collateral estoppel cannot be applied against him in this proceeding because it deprives him of an opportunity to have an independent adjudication of his rights, he had no notice of or opportunity to be heard in the criminal action, Frederick did not appeal from the judgment of conviction and he is a stranger and not in privity with a party to the prior criminal adjudication.

[3]An analogous situation is found in *United States* v. *Gramling* (5th Cir.) 180 F.2d 498. A proceeding in rem was brought by the United States against Gramling, the owner of a taxicab, to forfeit the vehicle used in the transportation of narcotics in violation of the Marihuana Tax Act. The driver, without the knowledge and consent of Gramling, used the cab to transport marijuana and was convicted. The court held that evidence that the driver ''stood convicted . . . of the offense would, we think, be conclusive of the fact that the possession of the marihuana in question in said taxicab was illegal.

''Claimant's [owner] answer did not deny that the taxicab had been used in violation of the Marijuana, Tax Act, but alleged the lack of knowledge and participation by claimant in the crime, and his good faith in the matter.

''Innocence or good faith is no defense in a matter such as this.'' (P. 501.)

We have heretofore discussed the settled rule that under the forfeiture statute an owner may be deprived of his automobile because of the illegal act of one to whom he entrusted his vehicle, and the policy reasons therefor; the law requires only that the person in possession and control of the vehicle with the owner's consent have knowledge of the unlawful act. Thus, if the owner is permitted to relitigate the issue of the entrustee's knowledge (which the entrustee himself cannot relitigate) the foregoing rules would be rendered meaningless, as would the purpose and legislative policy of section 11610 et seq., Health and Safety Code, to protect the public interest against the narcotic traffic and its victims.

When, the issue of Frederick's knowledge was litigated in the criminal trial, the owner's interest in the Corvette was adequately represented by the defense. Frederick testified therein that he had no knowledge of the presence of the marijuana in the vehicle. He had both the incentive and opportunity to adequately and fully litigate the issue under "rigorous safeguards against unjust conviction." (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.*, 58 Cal.2d 601, 606 [25 Cal. Rptr. 559, 375 P.2d 439].) Frederick did not appeal from the judgment and while we cannot speculate as to the reason, it is readily apparent that because the criminal proceedings were suspended and he was placed on probation and permitted to leave the state (Minute Order, January 29, 1965), it was to his benefit to and he did return to Boston University in Massachusetts (Agreed Statement on Appeal). Likewise Teitelbaum elected not to testify in the criminal case on the assumption he would benefit thereby; the Supreme Court refused to permit this "strategy" to defeat the plea of collateral estoppel. (58 Cal.2d at p. 607.) The situation is unlike that in *People* v. *Broad*, 216 Cal. 1 [12 P.2d 941], wherein the constitutionality of a forfeiture statute which failed to provide the owner with notice and a judicial hearing was the sole issue; the court found the statute to violate due process of law. Herein the forfeiture statute complies with due process requirements by providing notice and hearing. (§§ 11613, 11618, Health & Saf. Code.)

Finally, citing 24 American and English Encyclopedia (2d ed.) p. 735, and *Bernhard* v. *Bank of America*, 19 Cal.2d 807, 811 [122 P.2d 892], defining "A privy [as] one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under

one of the parties, as by inheritance, succession, or purchase,'' appellant asserts that he was not in privity with a party to the criminal proceeding; thus the issue of knowledge decided therein was not conclusively determined against him in the instant proceeding. However, to maintain the stability of judgments, insure expeditious trials, prevent '' 'vexatious litigation with its attendant expense both to the parties and to the public' '' (*O'Connor* v. *O'Leary*, 247 Cal.App.2d 646, 650 [56 Cal.Rptr. 1]) and to serve the ends of justice,[4] more and more our courts are striving to give effect to judgments by extending ''privies'' beyond the classical description to include relationships not originally embraced therein. (*Coca-Cola Co.* v. *Pepsi-Cola Co.*, 36 Del. 124, 133 [172 A. 260, 263-264]; see also *Zaragosa* v. *Craven*, 33 Cal.2d 315, 318-321 [202 P.2d 73, 6 A.L.R.2d 461]; *State Farm etc. Ins. Co.* v. *Salazar*, 155 Cal.App.2d Supp. 861, 865 [318 P.2d 210].) Accordingly Vestal in 50 Iowa Law Review 27, *Preclusion/Res Judicata Variables*, discusses the modern trend, ''Thus, the term 'privity' in itself does not state a reason for either including or excluding a person from the binding effect of a prior judgment, but rather it represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion. The emphasis in the analysis is upon the policy of ending litigation where there has been a fair trial of one's interests, as it has been observed that 'the doctrine of res judicata is primarily one of public policy and only secondarily of private benefit to individual litigants.'

''The courts and commentators have indicated a great dissatisfaction with the analysis in terms of privity and mutuality and have expanded the impact of preclusion far beyond the traditional concepts. Clearly, the field is developing; it is obvious that the last word has not been spoken on the matter.'' (P. 45.)

[4]Allowing an owner to relitigate the issue of knowledge could permit an illogical result. Despite conviction of the entrustee, a jury in a forfeiture trial might find in favor of the owner—holding in effect that the entrustee had no knowledge of the marijuana in the vehicle. This inconsistent result in fact obtained here. After a jury trial in August 1965, the jury rendered a verdict in favor of the owner denying forfeiture; this, however, was corrected by the trial court by granting a new trial which order was affirmed by this court. (*People* v. *One 1964 Chevrolet Corvette Convertible*, 251 Cal.App.2d 424 [59 Cal.Rptr. 594].)

In order to carry out the purposes and policy of the law, the forfeiture statute necessarily thrusts the entrustor and his entrustee into a close relationship; under the statute the former is held accountable for the latter's illegal use. It is the consent of the owner to the use of his vehicle—surrender of control at his peril—that places him in such a position that there are no constitutional impediments to a forfeiture where the use is illegal. (*People* v. *One 1941 Ford.8 Stake Truck,* 26 Cal.2d 503, 507 [159 P.2d 641].)

However, Vestal concludes that our courts are using the alternative method of determining the applicability of collateral estoppel by an examination of whether the interests of the person to be estopped were adequately represented when the issue was litigated in the earlier action. "The key to preclusion [collateral estoppel] now is not that certain parties have litigated, but rather that an issue has been adjudicated. The emphasis is not on a concept of identity of parties in the first and second suits. Rather, the shift has been to the practical situation involved. Has the litigant in Suit II been represented in the first suit so that it is reasonable and constitutionally permissible to hold him precluded? . . . If the supposedly precluded party in Suit II was not a party in Suit I, then the question may be cast in terms of whether he was adequately represented—whether there was incentive and opportunity for someone adequately to litigate the question under consideration—in Suit I. These of course, are limitations which inhere in the Constitution." (*Preclusion/Res Judicata Variables*: *Parties,* 50 Iowa L.Rev. 27, 76.) Where such adequate representation occurs the California Supreme Court has held that the issue involved is considered "necessarily decided." (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.,* 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.