45 Cal.2d 613 (1955)
THE PEOPLE, Appellant,
v.
ONE 1948 CHEVROLET CONVERTIBLE COUPE, ENGINE NO. FAA 433685, Defendant; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.
L. A. No. 23728. 
Supreme Court of California. In Bank. 
Nov. 29, 1955.
 Edmund G. Brown, Attorney General, Donald D. Stoker and W. B. Thayer, Deputy Attorneys General, for Appellant.
 Samuel B. Stewart, Jr., Hugo A. Steinmeyer and Joseph S. Potts for Respondent.
 TRAYNOR, J.
 In this proceeding the People seek the forfeiture of an automobile for being used in violation of section 11610 of the Health and Safety Code. The notice of seizure and intended forfeiture (Health & Saf. Code, 11612 et seq.) was directed to Mrs. V. E. Phillips, the registered owner, Ronald Leon Phillips, her son, and the Bank of America, the legal owner. Mrs. Phillips defaulted. The bank answered, denying that the vehicle was used in violation of the narcotics laws and that any narcotic was unlawfully in the possession of any occupant thereof.
 The cause was tried by the court sitting without a jury. (See People v. One 1941 Chevrolet Coupe, 37 Cal.2d 283, 300 [231 P.2d 832].) [1] Officer Brogan of the Long Beach Police Department testified that on August 3, 1953, he and Officer O'Rourke saw the vehicle parked at the curb of a *616 city street near school grounds where no cars are ordinarily parked. They decided to investigate and found four occupants in the vehicle. Clothier was in the front seat behind the wheel (see People v. One 1951 Ford Sedan, 122 Cal.App.2d 680, 691-692 [265 P.2d 176]), Dean and DeCordova were also in the front seat, and Phillips was in the rear seat. As they were getting from the vehicle to the sidewalk following orders of the officers, Clothier dropped a can containing marijuana into the bushes. The four suspects were arrested, and the vehicle was seized. Thus, by competent evidence, independently of any extrajudicial statements, the People proved that a narcotic had in fact been in the vehicle. (People v. One 1941 Buick Club Coupe, 72 Cal.App.2d 593, 596 [165 P.2d 44]; People v. One 1940 Buick 8 Sedan, 70 Cal.App.2d 542, 545-546 [161 P.2d 264].)
 Phillips' plea of guilty in a criminal action for unlawful possession of the marijuana was admitted in evidence against the registered owner but was excluded as against the bank. (See Vaughn v. Jonas, 31 Cal.2d 586, 593-596 [191 P.2d 432]; People v. One 1940 Oldsmobile Club Coupe, 80 Cal.App.2d 372, 377-378 [181 P.2d 950]; Langensand v. Obert, 129 Cal.App. 214, 218 [18 P.2d 725]; People v. Sanderson, 129 Cal.App. 531, 533 [18 P.2d 982].) Inspector Doyle, the officer in charge of the Narcotics Division of the Long Beach Police Department, testified that at "2:15 in the morning of the day of the arrest" he questioned the suspects and that "at a later time after the arrest," in the presence of Clothier and the other occupants of the vehicle, he had a conversation with Phillips, in which Phillips stated in effect that he knew before and at the time of the arrest and seizure that an occupant of the vehicle had marijuana in his possession. [fn. *] *617 This statement was also admitted against the registered owner but excluded as against the bank.
 The court found that Phillips had no interest in the vehicle, that at the time of the arrest and seizure Phillips was in possession of the vehicle, that it was being used to transport marijuana on the person of Clothier, an occupant thereof, that, as against the registered owner only, on the basis of the admissions, Phillips was aware of the presence of marijuana on the person of an occupant of the vehicle at the time of seizure. The court also found that the bank had not made a reasonable investigation of the moral responsibility, character, and reputation of the purchaser before its lien was created (Health & Saf. Code, 11620), that as against the bank, the admission of Phillips that he knew Clothier had marijuana at the time of the seizure was inadmissible hearsay, and that there being no other sufficient evidence of that fact, Phillips had no knowledge of the presence of any narcotic in the vehicle. Accordingly, judgment was entered forfeiting the vehicle to the state subject to the interest of the bank in the sum of $855.02. Since that sum was in excess of the value of *618 the vehicle at the time of the seizure, it was ordered that the vehicle be released to the bank in satisfaction of its lien. The People appeal.
 [2] Even though the bank did not make the investigation required by section 11620, its interest is not subject to forfeiture in the absence of a proper forfeiture of Mrs. Phillips' interest (People v. One 1937 Plymouth 6 4-Door Sedan, 37 Cal.App.2d 65, 72-74 [98 P.2d 750]), and despite the fact that she defaulted, the bank may protect its own interest by asserting any defense she had to the forfeiture. (People v. One 1939 La Salle 8 Tour. Sedan, 45 Cal.App.2d 709, 713 [115 P.2d 39].) The basic question on this appeal, therefore, is whether there was a proper forfeiture of Mrs. Phillips' interest in the vehicle.
 [3] It was not necessary that Mrs. Phillips know of the illegal use. "... certain uses of property may be regarded as so undesirable that the owner surrenders his control at his peril. The law thus builds a secondary defense against a forbidden use and precludes evasions by dispensing with the necessity of judicial inquiry as to collusion between the wrongdoer and the alleged innocent owner." (Van Oster v. Kansas, 272 U.S. 465, 467 [47 S.Ct. 133, 71 L.Ed. 354, 47 A.L.R. 1044].) [4] The purpose of the statutes is to curb the narcotic traffic, and "the public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced." (People v. One 1941 Ford 8 Stake Truck, 26 Cal.2d 503, 508 [159 P.2d 641].) [5] By entrusting the vehicle to her son, Mrs. Phillips accepted the risk that it would be used contrary to law. (People v. One 1940 Ford V-8 Coupe, 36 Cal.2d 471, 476 [224 P.2d 677]; People v. One 1933 Plymouth Sedan De Luxe Auto., 13 Cal.2d 565, 568 [90 P.2d 799]; People v. One 1951 Ford Sedan, 122 Cal.App.2d 680, 687 [265 P.2d 176]; Dobbins' Distillery v. United States, 96 U.S. 395, 398, 402 [24 L.Ed. 637]; Van Oster v. Kansas, supra, 272 U.S. 465, 467; J. W. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 512-513 [41 S.Ct. 189, 65 L.Ed. 376].) [6] When as in this case, the narcotic is found on an occupant of the vehicle, there is no presumption or inference that the registered owner or person entrusted with the vehicle had knowledge thereof (see People v. One 1941 Buick Sport Coupe, 28 Cal.2d 692, 695 [171 P.2d 719]) as there is when the narcotic is found on the person of the registered owner or his entrustee (People v. One 1952 Chevrolet Bel Aire, 128 *619 Cal.App.2d 414, 417 [275 P.2d 509]; People v. One 1940 Chrysler, 77 Cal.App.2d 306, 314 [175 P.2d 585]) and the People must establish by other evidence that the registered owner or the person entrusted with the vehicle had knowledge of the presence of a narcotic therein. (People v. One 1951 Mercury 2-Door Sedan, 116 Cal.App.2d 692, 693-694 [254 P.2d 140].) [7, 8] The People established that knowledge herein by Phillips' plea of guilty in the criminal action and by his statement to Inspector Doyle. These admissions were admissible to forfeit Mrs. Phillips' interest (for the reasons set forth below) and were therefore admissible to forfeit the bank's, for once the vehicle is shown to have been illegally used as to the registered owner, the only defense available to the lien claimants is Health and Safety Code, section 11620. (People v. One 1940 Ford V-8 Coupe, supra, 36 Cal.2d 471, 474.)
 [9] The proceeding under section 11610 is in rem (People v. One 1933 Plymouth Sedan De Luxe Auto., supra, 13 Cal.2d 565, 569), even though it is a kind of in rem proceeding in which the claimants to the property are entitled to a jury trial (People v. One 1941 Chevrolet Coupe, supra, 37 Cal.2d 283, 286, 300), and the declarations as well as the acts of the person in control of the vehicle bind the vehicle and thereby bind all claimants thereto. (Dobbins' Distillery v. United States, supra, 96 U.S. 395, 398-402; Interstate Securities Co. v. United States, 151 F.2d 224, 226; United States v. One Buick Automobile, 21 F.2d 789, 790-791; United States v. One 1952 De Soto Club Coupe, 122 F.Supp. 568, 569. In United States v. One 1949 Pontiac Sedan, 194 F.2d 756, cert. den. 343 U.S. 966 [72 S.Ct. 1061, 96 L.Ed. 1363], cited for a contrary rule, the court declared, "However in view of our further conclusion the propriety of the exclusion of this evidence is not decisive of the issue herein." In United States v. Packard Sedan, 23 F.2d 865, 869, the United States District Court for the Southern District of Florida reached a contrary result without reference to the Dobbins' Distillery case and similar cases.) [10] If Mrs. Phillips had been in possession of the vehicle and made these admissions, there could be no doubt that they would bind the vehicle and justify the forfeiture of her interest and necessarily therefore the interest of the bank. (People v. One 1951 Ford V-8 Custom Club Coupe, 119 Cal.App.2d 612, 613 [259 P.2d 693].) She entrusted the vehicle to Phillips, and while he had the right to its possession *620 and responsibility for its use, he had authority to speak for it and his admissions are as binding on it as hers would have been. (Dobbins' Distillery v. United States, supra, 96 U.S. 395, 398-402; United States v. One Buick Automobile, supra, 21 F.2d 789, 791.) The statement in People v. One 1950 Mercury Sedan, 116 Cal.App.2d 746, 751 [254 P.2d 666], that the driver's admissions do not bind the other claimants was unnecessary to the decision therein and is disapproved. [fn. *]
 [11a] Even if Phillips' plea of guilty and his statement to Inspector Doyle were not binding on the vehicle as vicarious admissions, his statement to the inspector was admissible to prove his state of mind, i.e., his knowledge of the presence of a narcotic in the vehicle. Although the People did not state for what purpose Phillips' statement to Inspector Doyle was offered, the court admitted it as against Mrs. Phillips, the registered owner, and it is clear from the record that the court considered the admissibility of Phillips' statement on the issue of knowledge apart from the issue as to whether or not a narcotic was in the vehicle. The presence of a narcotic in the vehicle had already been proved by direct evidence independently of any extrajudicial statements. The remaining issue in the case was Phillips' knowledge, and the record leaves no doubt that the court considered Phillips' statements as offered to prove that knowledge, for it found as against her "on the basis of admissions of Ronald L. Phillips that he was aware of the presence of marijuana on the person of an occupant of said vehicle" but that as against the bank that Phillips "had no knowledge" of the presence of any narcotic in the vehicle. (See Cripe v. Cripe, 170 Cal. 91, 94 [148 P. 520].)
 [12] Ordinarily a declaration of a state of mind is admissible only to prove the declarant's state of mind at the *621 time of the declaration. (See Adkins v. Brett, 184 Cal. 252, 255 [193 P. 251]; Estate of Carson, 184 Cal. 437, 445 [194 P. 5, 17 A.L.R. 239]; Estate of Anderson, 185 Cal. 700, 718 [198 P. 407].) [13] It has been held in this state, however, that under certain circumstances declarations are admissible to prove a state of mind at a particular time although uttered before or after that time, apparently on the theory that under these particular circumstances "[t]he stream of consciousness has enough continuity so that we may expect to find the same characteristics for some distance up or down the current." (Chafee, Progress of the Law--Evidence, 1919-1922, 35 Harv.L.Rev. 428, 444; Estate of McDevitt, 95 Cal. 17, 26 [30 P. 101]; Estate of Ricks, 160 Cal. 450, 466 [117 P. 532] [declarations of testator after will was executed admissible to show mental condition at time it was executed]; Williams v. Kidd, 170 Cal. 631, 648 et seq. [151 P. 1, Ann.Cas. 1916E 703]; Donahue v. Sweeney, 171 Cal. 388, 391- 392 [153 P. 708]; De Cou v. Howell, 190 Cal. 741, 750 [214 P. 444] [declarations of grantor made after making a deed admissible on issue of delivery]; Estate of Anderson, supra, 185 Cal. 700, 720 [declarations of testatrix at a "not far distant time" after execution of will, that she then feared her aunt, admissible to show attitude toward her aunt at the time she executed will]; Schooler v. Williamson, 192 Cal. 472, 476 [221 P. 195], [declarations of decedent made a week after the time of alleged transfer to plaintiff that envelope and endorsement thereon were the ones referred to by him in a conversation two years earlier admissible to show intent of decedent in making such indorsement whenever it was made]; Whitlow v. Durst, 20 Cal.2d 523, 525 [127 P.2d 530] [declarations of husband a few days after alleged reconciliation, admissible to show lack of intent to reconcile]; Hansen v. Bear Film Co., 28 Cal.2d 154, 173-174 [168 P.2d 946] [declarations of deceased owner of stock after transfer of stock admissible to show stock was to be held in trust]; Estate of Sargavak, 35 Cal.2d 93, 96-98 [216 P.2d 850, 21 A.L.R.2d 307] [declarations of decedent before and after execution of an instrument admissible to show intent with which it was executed]; Casey v. Casey, 97 Cal.App.2d 875, 878-883 [218 P. 842] [declarations of grantor before and after conveyance admissible to show whether she intended the grant as a gift or a trust]. See 141 A.L.R. 704-710; McBaine, Admissibility in California of Declarations of Physical and Mental Condition, 19 Cal. *622 L.Rev. 231, 367; McCormick on Evidence [1955] 466-467, 567- 570.)
 [11b] In this case Phillips knew that he was arrested, he knew that the vehicle was seized because an occupant thereof possessed a narcotic. There was no reason to hold him under arrest, if, prior thereto, he did not know of such possession, yet he not only did not disclaim such knowledge but while under arrest and at a time in close proximity to the arrest and seizure freely admitted his knowledge in the presence of the other suspects. Under the circumstances his statement was plainly relevant to show his knowledge at the time of the arrest and seizure. The matters admitted were within his special knowledge, the hearsay dangers of faulty perception and memory were not present, there was no apparent motive for misstatement, and the fact that his statement was not only against his interest in the possession of the vehicle as well as his mother's interest therein, but against his interest penally, gives reasonable assurance of his veracity. Under these circumstances Phillips' statement was admissible to prove that he knew at the time of the seizure of the vehicle that there was a narcotic therein.
 The judgment is reversed.
 Gibson, C.J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.
 "I asked him to relate what had occurred in regard to purchasing this marijuana. Phillips stated that he had met Clothier, who was down here on leave from a naval vessel which was moored at San Francisco,--which was moored in San Francisco Bay, and they had picked up the other party Dean, and DeCordova also was from another vessel in the same area, came down here to Long Beach with Clothier and he had agreed to drive them back to San Francisco in time to be on their vessel by 8:00 o'clock Monday morning, and that on the afternoon before the arrest they decided they would purchase some marijuana, they would take it to San Francisco and sell it, and that the four of them had pooled their funds and that he then drove the other three occupants in this car to Tijuana, and there on the street, he and Clothier contacted a Mexican and Clothier left with this Mexican, at which time he returned and had this marijuana."
 "It was shown to them there and then Phillips was worried about the Customs officials finding it in his car. Clothier and DeCordova had their sailor uniforms in a parcel or package within the car; that they had decided to change into their clothes later on in the trip. They decided that the two boys would change into their sailor clothes, and take the marijuana and walk across the border ahead of the car. There would be less suspicion."
 "They both agreed to it, and Clothier took the narcotics and he and DeCordova walked across the border."
 "After waiting for sometime across the border, Dean came up to them on the United States side and told them not to get restless, that Phillips had sent him ahead to tell them he was in the line. After Phillips crossed the line, he picked up the suspects and proceeded north back to Long Beach."
 "At a place outside of San Diego they stopped at a service station and Clothier got out of the car and went to the rest room at which time he came back and Phillips was driving, and after they left this rest room and got about two miles, Clothier broke out a marijuana cigarette which he told them he had rolled in the washroom and lit it and passed it around to all four of them."
 "At a place--they weren't certain whether it was in the City limits of Long Beach or on the border, they stopped for a cup of coffee or sandwich. When they got back in the car, Phillips, having driven, Clothier offered to drive, and he permitted Clothier to drive the car back to Long Beach, and Clothier did drive it, and they came back to the area which is north of where they were arrested, and which had been the original point of departure, and none of their other companions were around, and they drove around the block and stopped, at which time the police car came up to them and found them and shook them down as they took them out of the car."
NOTES
[fn. *] *. The testimony of the police officer as to the conversation with Phillips was: "I questioned Phillips as to the--in fact, I questioned him generally as to who was the registered owner of the car. Phillips admitted he was.
[fn. *] *. In that case the forensic chemist "would not say that these were the same cigarettes that he examined in his laboratory and that the specific cigarettes before him were narcotic. ... Therefore so far as the record in this case is concerned the cigarettes found in the coat and in the car are brown paper cigarettes, no more." (116 Cal.App.2d at 750-751.) There was thus no evidence other than the admission of the driver, one of the registered owners, that the vehicle was used illegally. For the same reasons that a conviction in a criminal proceeding cannot be had without proof of the corpus delicti independently of admissions of the defendant (People v. Cullen, 37 Cal.2d 614, 624-625 [234 P.2d 1]) a forfeiture of a vehicle cannot be had without proof independently of admissions that a narcotic was in the car. There was therefore no basis for the forfeiture of even the driver's interest in the vehicle. The rule admitting declarations of a state of mind was not invoked or considered in that case and it is therefore no authority one way or the other as to the application of that rule.