463 P.2d 827

In the Matter of ONE 1965 FORD MUSTANG, Motor No. 5RO7A242628, License No. HGH–968.

The STATE of Arizona, Appellant,

v.

Rose I. LEWIS, Appellee.

No. 9802–PR.

Supreme Court of Arizona.

In Banc.

Jan. 15, 1970.

Court of Appeals, Division One, decided by Division Two, reported in 10 Ariz.App. 45, 455 P.2d 995, reversing a judgment of the Superior Court of Maricopa County, which held that § 36-1041, A.R.S., was unconstitutional. The decision of the Court of Appeals is vacated.

. The case involved the forfeiture of a 1965 Ford Mustang automobile. The State of Arizona filed an action in accordance with § 36-1041, A.R.S., et seq., to forfeit the 1965 Ford Mustang, alleging that it had been used to transport unlawfully a narcotic drug—marijuana. The automobile was owned by Rose I. Lewis, hereinafter referred to as owner or mother. She is the mother of Michael Lewis, who was seventeen years old at the time of the alleged use. The testimony shows that one Ralph Robinson, an undercover agent for the Arizona State Department of Liquor Licenses and Control, contacted Michael to purchase marijuana for him. According to the agent's testimony, he agreed to make the purchase on the second time he was contacted, and according to Michael's testimony he had requested it at least twice before. It is undisputed that prior to the time that he agreed to make the purchase he had told the agent he could not do so. However, on the evening of April 13, 1967, Michael agreed to obtain a quantity of marijuana for the agent, but told him that he would have to have the money in advance in order to make the purchase. They agreed to meet at the Uptown Plaza shopping center in Phoenix the next day.

Michael arrived at the shopping center the next evening driving the 1965 Ford Mustang which is the subject of the present proceedings, at which time the agent gave him the money to purchase the marijuana. There is a conflict in the testimony as to the amount of money given at the time, Michael testifying that the agent gave him $30, and the agent testifying that he gave him $12. Michael returned with the marijuana in the Mustang, and according to the undisputed testimony delivered to the agent at least one package.

Robert K. Corbin, former Maricopa County Atty., Moise Berger, Maricopa County Atty., H. Louis Hiser, Deputy County Atty., for appellant.

Kramer, Roche, Burch, Streich & Cracchiolo, by Frank Haze Burch and B. Michael Dann, Phoenix, for appellee.

Harrison, Strick, Myers & Singer, by Mark I. Harrison, Phoenix, for amicus curiae Car and Truck Rental Leasing Association of Arizona (CATRALA).

McFARLAND, Justice:

This case comes before this Court on the petition for review of the decision of the

The mother testified that she had no knowledge that her car was being used to transport marijuana; that Michael had been a good boy; that she had no reason to believe that her son Michael was engaged in the use or transportation of marijuana; that she had never received any information from any officer of the law, or any one else, to give her any reason to believe that the automobile had been used for such purposes; that she believed her son to be a person of good character and reputation, and morally responsible. She stated that she had permitted her son to use the automobile to go to and from school and on that particular occasion to take it to the library.

Section 36–1041 through 1046, A.R.S., set forth the procedure for the forfeiture and makes exception for forfeiture to lien holders, mortgagees, or those holding title under conditional sales.[1]

1. ARTICLE 2. SEIZURE OF VEHICLES USED IN NARCOTICS VIOLATIONS

§ 36–1041. Forfeiture of vehicle

The interest of the legal owner or owners of record of any vehicle used to transport unlawfully a narcotic drug, or in which a narcotic drug is unlawfully kept, deposited or concealed, or in which a narcotic is unlawfully possessed by an occupant, shall be forfeited to the state.

§ 36–1042. Seizure and delivery of vehicle

Any peace officer making or attempting to make an arrest for a violation of article 1 of this chapter shall seize the vehicle used to transport unlawfully a narcotic drug, or in which a narcotic drug is unlawfully kept, deposited or concealed, or unlawfully possessed by an occupant, and shall immediately deliver the vehicle to the sheriff of the county in which the seizure is made, to be held as evidence until forfeiture is declared or release ordered.

§ 36–1043. Notice of seizure

A peace officer who seizes a vehicle under the provisions of this article shall file a notice of the seizure and intention to institute forfeiture proceedings with the county clerk of the county in which the seizure occurs, and the clerk shall serve notice thereof on all owners or claimants of the vehicle, by one of the following methods:

1. Upon an owner or claimant whose right, title or interest is of record in the division of motor vehicles, by mailing a copy of the notice by registered mail to the address on the records of the division.

2. Upon an owner or claimant whose name and address are known, by mailing a copy of the notice by registered mail to his last known address.

3. Upon an owner or claimant, whose address is unknown but who is believed to have an interest in the vehicle, by publication in one issue of a newspaper of general circulation in the county where the seizure occurred, or if there is no such newspaper, then by publication in a newspaper of general circulation in Maricopa county.

§ 36–1044. Time for filing answer

Within twenty days after the mailing or publication of a notice of seizure, as provided by § 36–1043, the owner of the seized vehicle may file a verified answer to the allegation of the use of the vehicle contained in the notice of seizure and of the intended forfeiture proceedings. No extension of time shall be granted for the purpose of filing the answer.

§ 36–1045. Proceedings

A. If a verified answer to the notice given as prescribed by this article is not filed within twenty days after the mailing or publication thereof, the court shall hear evidence upon the charge of unlawful use of the vehicle, and upon motion shall order the vehicle forfeited to the state.

B. If a verified answer is filed, the forfeiture proceedings shall be set for hearing on a day not less than thirty days after the answer is filed, and the proceedings shall have priority over other civil cases. Notice of the hearing shall be given in the manner provided for service of the notice of seizure.

C. At the hearing any owner or claimant who has a verified answer on file may show by competent evidence that the vehicle was not used to transport narcotic drugs illegally, or that narcotic drugs were not unlawfully possessed by an occupant of the vehicle, nor the vehicle used as a depository or place of concealment for narcotic drugs.

D. A claimant of any right, title or interest in the vehicle may prove his lien, mortgage or conditional sales contract to be bona fide, and that his right, title or interest was created after a reasonable investigation of the moral responsibility, character and reputation of the purchaser, and without knowledge that the vehicle was being, or was to be used for the purpose charged, but no person who has a lien dependent upon possession for the compensation to which he is legally en-

The lower court denied forfeiture on the ground that the forfeiture statutes were unconstitutional. Forfeiture statutes have been classified into two categories—

(1) Where the article forfeited is contraband per se; and

(2) Where the article forfeited is derivative contraband—that is, only when it is used in the violation of the law.

In the first category the statutes have been held clearly constitutional because the possession of the article itself is of such a nature that it constitutes a crime. One 1958 Plymouth Sedan v. Com. of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed. 2d 170.

It is clear that the use of an automobile for the transportation of narcotic drugs falls in the second category. Even under this line of cases, statutes which provide for forfeiture where property, which is not itself obnoxious to the law, is used with the consent of the owner but without his knowledge that it is to be used for illegal purposes have been held to be constitutional. Van Oster v. Kansas, 272 U.S. 465, 467, 47 S.Ct. 133, 134, 71 L.Ed. 354.

> "It is not unknown, or indeed uncommon, for the law to visit upon the owner of property the unpleasant consequences of the unauthorized action of one to whom he has intrusted it. * * * They suggest that certain uses of property may be regarded so undesirable that the owner surrenders his control at his peril.
>
> * * * * * *
>
> "It has long been settled that statutory forfeitures of property intrusted by the innocent owner or lienor to another who uses it in violation of the revenue laws of the United States is not a violation of the due process clause of the Fifth Amendment. * * *"

Also, one of the leading state cases so holding is that of People v. One 1948 Chevrolet Convertible Coupe, 45 Cal.2d 613, 290 P.2d 538, 55 A.L.R.2d 1272, in which case the owner consented to the use of the automobile but its use for the transportation of the narcotic was without her knowledge. The case was similar to the facts in the instant case, in that the mother had entrusted the automobile to the use of her son, the son having full knowledge that the passenger riding with him in the car possessed narcotics. Justice Traynor held that the automobile was subject to forfeiture because the person to whom the owner had entrusted the car itself had knowledge of the transportation of the narcotic, and that it was not necessary for the owner to know of the illegal use; that by entrusting the vehicle to her son she accepted the risk that he would use it contrary to the law. However, as pointed out in the brief of Amicus Curiae, the Car and Truck Rental Leasing Association of Arizona (CATRALA), after

---

titled for making repairs or performing labor upon and furnishing supplies or materials, for, and for the storage, repair or safekeeping of any vehicle, and no person doing business under any law of the state or the United States relating to banks, trust companies, building and loan associations, and loan companies, credit unions, or licensed pawnbrokers or money lenders or regularly engaged in the business of selling vehicles or of purchasing conditional sales contracts on vehicles shall be required to prove that his right, title or interest was created after a reasonable investigation of the moral responsibility, character and reputation of the owner, purchaser, or person in possession of the vehicle when it was brought to the claimant.

§ 36–1046. Disposal of vehicle

A. If proper proof is presented at the hearing, the court shall order the vehicle released to the bona fide owner, lien holder, mortgagee or vendor if the amount due him is equal to, or in excess of, the value of the vehicle as of the date of seizure, it being the purpose of this article to forfeit only the right, title or interest of the purchaser.

B. If the amount due the claimant is less than the value of the vehicle, the vehicle shall be sold at public auction by the sheriff of the county in which the seizure was made, in the same manner provided by law for the sale of chattels under execution.

Justice Traynor's opinion was handed down the California Assembly repealed its automobile forfeiture statute in 1967.

Some courts follow the cases holding it to be constitutional to forfeit property under such statutes where the owner had no knowledge of the illegal use. But many states do not have forfeiture statutes. Others have statutory exemptions to innocent owners. However, in the instant case, the owner contends that under our statute the legislature intended that knowledge of the illegal use is required before forfeiture. In refuting the argument to the contrary, she stated:

"* * * One cannot attribute such a blind, inequitable and unconstitutional intent to the Arizona legislature."

It will be noted that a strict construction of § 36–1041, A.R.S., would permit forfeiture of the automobile of an *innocent owner*. In Hoover v. People, 68 Colo.2d 249, 187 P. 531, which involved a forfeiture under a statute dealing with illegally transporting intoxicating liquor, the court said:

"If section 20 is to be construed literally, I forfeit title to my automobile if I overtake, on the road, a man with a bottle of whisky in his pocket, invite him to ride, and he accepts the invitation. He is using my automobile to transport whisky unlawfully; I have not consented to it and do not know it; but, if the people are right in this case, that will not avail us. The logical consequence is that, if he pushes me out of the automobile and drives on with it, he may be liable for assault, but not for larceny, nor in replevin, trover, or trespass de bonis, because the automobile, after I lose property in it, is as much his as mine. If a passenger on a street car or the railroad has whisky in his suit case or pocket, the car and engine no longer belong to the railroad company, and the company can maintain no action based on title thereto.

"Is this result absurd? It surely is; but it is a conclusion inevitable from the argument that is put before us in this case. The lawful innocent owners are to be deprived of property in an automobile because some one, without their knowledge or consent, carried liquor in it; and this court is asked to say that they have no right in that automobile which the law is bound to respect. That would be exactly the condition in the cases above supposed. Under the literal terms of this section, the machine is not a subject of property, and, since there is no provision that it be forfeited to the state, it can never again belong to anybody.

"Considerations of this sort have led to the abolition of deodands, either by statute or otherwise, in England and most of the states of the Union; in none of them is the common law enforced. Congress so amended the law against the importation of intoxicating liquor into Oklahoma as to expressly say that the vehicle should be forfeited, 'whether used by the owner thereof or other persons.' Why was not section 20 made as certain as that? Would the people have passed this act, if it had been so expressed as to plainly tell them that under it the owner of any vehicle of any kind in which liquor happened to be transported, even without his knowledge or consent, ipso facto forfeited all his title thereto?

"The conclusion is that there must be some modification of the literal terms of section 20. See Aggers v. People, 20 Colo. 348, 38 P. 386. Where, then, shall we stop, in reducing the literal scope of this section? It must be that the intention of section 20 was to destroy the proprietary interest of the violators of the law, including accessories before and after the fact—e. g., all who loan their property for a violation of the act, or permit or connive at such use of it, but not the interest of wholly innocent proprietors."

In the case of 1957 Chevrolet v. Division of Narcotic Control, 27 Ill.2d 429, 189 N.E.2d 347, the statute of Illinois provides:

" * * * 'Any vehicle, boat or aircraft which is used to unlawfully transport or facilitate the unlawful transportation or unlawful sale of any narcotic drug, or in which any narcotic drug is unlawfully kept, deposited, or concealed or which is used to facilitate the unlawful keeping, depositing, concealing or selling of any narcotic drug or if any narcotic drug is unlawfully possessed by an occupant thereof or which is used to facilitate the unlawful possession or unlawful sale of any narcotic drug by an occupant thereof shall be forfeited to the State.' Ill.Rev. Stat.1959, chap. 38, par. 192.28–25.

* * * * * *

" * * * 'The claimant of any right, title or interest in such vehicle, boat or aircraft may prove his lien, mortgage or conditional sales contract to be bona fide and that his right, title or interest was created after a reasonable investigation of the moral responsibility, character and reputation of the purchaser, and without any knowledge that such vehicle, boat or aircraft was being or was to be used for the purpose charged. In the event of such proof, the Division shall order such vehicle, boat or aircraft released to the bona fide owner, lien holder, mortgagee or vendor if the amount due him is equal to or in excess of the value of such vehicle, boat or aircraft. If the amount due to such person is less than the value of such vehicle, boat or aircraft, such vehicle, boat or aircraft shall be sold at public auction by the Department of Finance.'

Ill.Rev.Stat.1959, chap. 38, par. 192.28–29."

In construing this statute the Illinois court said:

' * * * We think a fair construction of the statute requires that something more than mere ownership of the 'guilty' vehicle be shown in order to work a forfeiture of one's interest therein. We can see nothing about the mere relinquishment of possession which, of itself, has any relation to its subsequent unlawful use.

"In the Boling case the Department urged that it is enough to work a forfeiture under the statute that narcotics have been physically present in the vehicle. We rejected the contention, saying 'While we may take judicial notice of the evils of narcotics traffic, and of the legislative aim at repressing such evil in enacting the statute, we think at the same time that to support the construction urged by the Department the terms of the statute would have to be much clearer than they are.' This answer, we think, is applicable as well to the contention advanced in the case at bar. The words of a statute must be read in a reasonable, common sense manner, and serious as the evils of the narcotic traffic undoubtedly are, it is not to be supposed that the legislature intended a forfeiture unless the owner has some connection therewith or was otherwise at fault in some respect."

In the case of 1957 Chevrolet v. Division of Narcotic Control, supra, the Illinois court, in holding that a statute must be given a reasonable and commonsense interpretation, used the words:

" * * * serious as the evils of the narcotic traffic undoubtedly are, it is not to be supposed that the legislature intended a forfeiture *unless the owner has some connection therewith or was otherwise at fault in some respect.*" [Emphasis added.]

This was a reasonable approach to the situation that confronted the Illinois court in interpreting a statute similar to that of the State of Arizona, and was in line with the decision of the United States Supreme Court in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, holding that a forfeiture statute was a quasi-criminal proceeding; and the decision in Plymouth Sedan v. Pennsylvania, supra, holding that the object of the statute was to penalize for a criminal offense.

In the latter case, in holding that forfeiture was quasi-criminal in character, and

that the object was to penalize for commission of a violation of the law, the United States Supreme Court stated:

"* * * There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss. * *

* * * * * *

"Finally as Mr. Justice Bradley aptly pointed out in Boyd, a forfeiture proceeding is quasi-criminal in character. *Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law.* In this case McGonigle, the driver and owner of the automobile, was arrested and charged with a criminal offense against the Pennsylvania liquor laws. The record does not disclose which particular offense or offenses he was charged with committing. If convicted of any one of the possible offenses involved, however, he would be subject, if a first offender, to a minimum penalty of a $100 fine and a maximum penalty of a $500 fine. In this forfeiture proceeding he was subject to the loss of his automobile, which at the time involved had an estimated value of approximately $1,000, a higher amount than the maximum fine in the criminal proceeding. It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible. That the forfeiture is clearly a penalty for the criminal offense and can result in even greater punishment than the criminal prosecution has in fact been recognized by the Pennsylvania courts.

* * * * * *

"In sum, we conclude that the nature of a forfeiture proceeding, so well described by Mr. Justice Bradley in Boyd, and the reasons which led the Court to hold that the exclusionary rule of Weeks v. United States, supra [232 U.S. 383, 58 L.Ed. 652], is obligatory upon the States under the Fourteenth Amendment, so well articulated by Mr. Justice Clark in Mapp, support the conclusion that *the exclusionary rule is applicable to forfeiture proceedings such as the one involved here.* * * *" [Emphasis added.]

The Court thereby held that the exclusionary rule in criminal procedure applied for the reason that the forfeiture was a *penalty for a criminal offense.* Under the present state of constitutional development, there can be no question but that forfeiture of an automobile is punishment for a criminal offense. It is the only way a car could be forfeited; otherwise, it would be taking property without due process of law. In the instant case, under the statute, the forfeiture was likewise a penalty because the automobile was used in a criminal offense. Therefore, under the principle of law set forth in the Plymouth Sedan case, the necessary intent to commit the offense as set forth in § 13–131, A.R.S., would be applicable. It provides, in part:

"In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence. * * *"

In a forfeiture case, if an automobile is to be forfeited the application of this rule of criminal law would require that the owner of the vehicle must intentionally permit a third person to use the automobile for transportation of narcotics. The trial court stated at the conclusion of the hearing that the statute did not give an innocent owner an opportunity to avoid forfeiture, and upon this basis held

"* * * that the statutes involved, Sec. 36–1041 and Sec. 36–1045, are unconstitutional in that they deprive the owner of the right of personal property without due process of law, * * *"

However, we do not hold that the owner does not have such a right. We must look to the intent of the legislature in interpreting a statute. This Court has held many times that a legislative act is presumed to be constitutional, and that every intend-

ment must be indulged in by this Court in favor of its validity. Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136.

"Where differing constructions of a statute are possible, it is our duty to construe it in such a manner that it will be constitutional, State v. A. J. Bayless Markets, Inc., 86 Ariz. 193, 342 P.2d 1088 (1959)."

See also: State v. Locks, 91 Ariz. 394, 372 P.2d 724; Whitney v. Bolin, 85 Ariz. 44, 330 P.2d 1003; State Bd. of Technical Registration v. McDaniel, 84 Ariz. 223, 326 P.2d 348; State v. Smith, 31 Ariz. 297, 252 P. 1011.

Section 36–1041, A.R.S., states that:

"The interest of the legal owner or owners of record of any vehicle used to transport unlawfully a narcotic drug, or in which a narcotic drug is unlawfully kept, deposited or concealed, or in which a narcotic is unlawfully possessed by an occupant, shall be forfeited to the state."

A strict construction of this statute would permit the forfeiture of a vehicle if some one placed narcotics in it, without the knowledge of the owner, while it was parked in a parking lot. Such a construction would in effect make the statute unreasonable and arbitrary, and not within the intent of the legislature. The trend in more recent decisions has been to hold that the object of the forfeiture of a vehicle is punishment.

We do not believe it was the intent of the legislature to penalize an innocent person for an offense which he did not commit, or for which he did not intend to permit his automobile to be used, or have knowledge that it would be so used. This Court, in State v. Locks, supra, determined the necessity for knowledge and scienter in construing our obscenity laws, and stated:

"If, as defendant here contends, the Arizona obscenity statute is in fact without the scienter requirement, then the statute must fall by force of the Smith holding. However, the Supreme Court of the United States has often recognized '* * * the basic constitutional principle that the construction of state laws is the exclusive responsibility of the state courts.' Speiser v. Randall, 357 U.S. 513, 523 n. 7, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). And for the reasons given below we construe Section 13–532 to require proof of guilty knowledge or scienter.

"Since Smith was handed down in 1959 the highest courts of twelve states have been presented with the problem herein involved—i. e. the construction to be given an obscenity statute which on its face does not require scienter. In nine of these jurisdictions, the statutes have been upheld as impliedly containing the scienter requirement. * * *

\* \* \* \* \* \*

"We choose to follow the lead of the majority of those courts which have ruled on this question and construe Section 13–532 as impliedly requiring scienter. In State v. Hooker, 45 Ariz. 202, 206, 41 P.2d 1091, 1092 (1935) it was stated that: 'It is our duty * * * to give to the language of all statutes a meaning that will render them constitutional if this can reasonably be done.' Again, in McManus v. Industrial Commission, 53 Ariz. 22, 28, 85 P.2d 54, 56 (1938) this court observed that: 'It is our duty to uphold an act if, on any reasonable theory, a construction may be given thereto which would make it constitutional.'"

We accordingly hold that an automobile may not be forfeited under § 36–1041, A.R.S. et seq., unless the owner had some connection with the unlawful act, or intended to permit the automobile to be used by a third person in the commission of the unlawful act, or had knowledge it was to be so used. This is in line with the trend of the more recent decisions of the United States Supreme Court in the protection of constitutional rights, both of person and property.

In the instant case the evidence is uncontradicted that the use of the automobile for transportation was at the instance and request of the narcotics agent—that the mother, the owner, had permitted the 17-year-old son to use the automobile for the purpose of going to and from school

and the library. There is no evidence—circumstantial or otherwise—that she had any knowledge or reason to believe that the boy would use the automobile for an illegal purpose, in violation of § 36–1041, A.R.S.—that she had utmost confidence in her son, and believed him to be of good moral character—that the narcotics agent had never indicated to her anything which would arouse her suspicions to the contrary.

The decision of the Court of Appeals is vacated, and the judgment of the Superior Court denying forfeiture is affirmed.

LOCKWOOD, C. J., and UDALL, J., concur.

STRUCKMEYER, Vice Chief Justice (concurring).

I wish to make it plain why I am in agreement with Justice McFarland in the disposition of this case. A.R.S. § 36–1041 et seq. superficially purports to confiscate the property of the innocent because of the criminal acts of others. It is penal in nature since it punishes those who, without more, permit others to use their property. Those authorities which support the proposition that an owner's interest in a vehicle may be forfeited without criminal knowledge or design enunciate a doctrine which, in my opinion, is incompatible with the mobile civilization that we live in today. This statute should not be construed to punish acts "which completely innocent and well meaning people may do." See State v. Cutshaw, 7 Ariz.App. 210, 437 P.2d 962.

HAYS, Justice (dissenting).

I dissent. The legislature of our state has manifested a firm intention to curb in every way possible the evils of illicit narcotic traffic. In their wisdom they invoked the time honored device of forfeiture as a deterrent to all who knowingly or unknowingly came within the ambit of this illegal field. Justice Traynor said in People v. One 1948 Chevrolet Convertible Coupe, 45 Cal.2d 613, 616, 290 P.2d 538, 541, 55 A.L.R.2d 1272 (1955): "The purpose of the statutes is to curb the narcotic traffic, and 'the public interest to be protected against the drug and its victims outweighs the loss suffered by those whose confidence in others proves to be misplaced.' People v. One 1941 Ford 8 Stake Truck, 26 Cal.2d 503, 508, 159 P.2d 641, 643."

On June 6, 1967 the California legislature repealed the motor vehicle forfeiture statute. 1967 Statutes and Amendments to the Codes, Calif., Ch. 280. Legislative action is the appropriate manner under law to correct any deficiencies or harshness which may exist in our Arizona statute. We should not be heard to complain of the public disfavor which falls on our courts if we depart from the path of precedent to invade legislative fields.